# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7538 | **DATE** | 4/13/2001 |
| **CASE TITLE** | Morris vs. Risk Management Alternatives, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for class certification [4] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | APR 17 2001 date docketed | |
| | Notified counsel by telephone. | | 16 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 4/16/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD7 mailing deputy initials |

| | | |
|---|---|---|
| WILLIE JAMES MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 00 C 7538 | |
| | ) | |
| RISK MANAGEMENT | ) | |
| ALTERNATIVES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**
APR 17 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Willie James Morris ("Morris"), filed this putative class action against defendant Risk Management Alternatives, Inc. ("RMA"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Illinois Collection Agency Act, 225 ILCS 425/9(a) ("ICAA"). Plaintiff now moves for class certification. For the following reasons, plaintiff's motion for class certification is granted.[1]

---

[1] On April 10, 2001, two days before the ruling date on the motion for class certification, defendant filed an Emergency Motion for Leave to File Surreply to address an issue that arose after the court-ordered briefing schedule closed on February 9, 2001. For the following reasons, the court denies the motion. First, defendant does not explain how the issue of plaintiff's delay between filing the motion for class certification (November 30, 2000) and presentment and service of that motion (January 4, 2001) arose after the court-ordered briefing schedule closed. Defendant could have made this objection in its response to the motion for class certification. Nor is the court convinced that the apparent discovery dispute that arose after the close of the briefing schedule requires granting of the emergency motion. As noted by defendant, plaintiff has agreed to respond to discovery requests (served by defendant on plaintiff January 26, 2001 after defendant's response to the motion for class certification) by the end of April. And as set forth in this court's opinion granting class certification, should discovery reveal evidence that class certification is not warranted, the court may revisit the class certification issue.

1

## BACKGROUND

RMA regularly engages in the collection of debts owed by certain consumers to certain RMA customers, and regularly reports alleged debts to credit reporting agencies, including the three credit reporting agencies, Equifax, Experian and Trans Union. (Ans. ¶¶ 6, 9.) Mr. Morris alleges that RMA is the sixth largest collection agency in the United States, collecting over $6 billion in consumer debts each year. (Compl. ¶ 1.) During the year preceding the filing of this action (November 30, 2000), Ameritech represented to RMA that Mr. Morris owed Ameritech a debt of $61.90, and RMA subsequently attempted to collect the alleged debt and also reported the alleged debt to a number of credit reporting agencies. (Compl. ¶ 8; Ans ¶ 8.) Mr. Morris alleges that RMA negligently or intentionally assigned at least two account numbers to a number of debts it was attempting to collect, including that of plaintiff. (Compl. ¶ 11.) As a result, RMA reported to the credit reporting agencies that a debtor from whom it was attempting to collect one debt owed two or more debts. (Mot. Class Certification at 2, ¶ 3.) Mr. Morris complained to RMA that certain credit reporting agencies listed a debt he owed to Ameritech under two different account numbers. (Ans. ¶ 12.) Mr. Morris alleges that, in response, RMA sent plaintiff a letter, attached as Exhibit A, dated May 15, 2000, in which RMA stated, "Due to our computer system conversion in January 1999, the above referenced account has been reported to the credit bureaus under two account numbers." The account number listed is 312-929-7329-3168. Below that account number is an RMA/ABACUS account number: 424406/1570849. The letter further states: "The listing for account number 1570849 will be removed from your credit report, please allow approximately 30 days for the reporting agents to update this information." (Compl. Ex.

A; Ans. ¶ 13.)

Mr. Morris alleges that RMA did not keep its promise to remove the duplicative report from his credit report, and that on July 14, 2000, he complained to the Illinois Department of Professional Regulation ("Department") informing the Department of RMA's letter of May 15, 2000 that account 157089 would be removed from his credit report but that as of July 14, 2000 it had not been reported to the credit bureaus as removed. (Compl. ¶¶ 14-15 and Ex. B.) Then, on August 23, 2000 RMA sent Mr. Morris a letter, attached as Exhibit C, again stating the duplicative reporting was the result of a computer system conversion and promising to correct the error. (*Id.* ¶ 16.) The content of the August 23, 2000 letter is essentially the same as the letter sent by RMA to Mr. Morris on May 15, 2000. (*See id.* Ex. C.) Mr. Morris alleges that, contrary to RMA's promise, the debt continued to appear on plaintiff's credit reports in duplicate form, through at least November 22, 2000. (*Id.* ¶ 17.) He also alleges on information and belief that more than 50 other individuals also have had duplicative reports of the same debt made by RMA to credit bureaus. (*Id.* ¶ 20.)

Although Mr. Morris disputes the validity of the debt owed to Ameritech, he paid it and received a letter from RMA dated May 15, 2000 confirming that he had paid the debt. (*Id.* ¶ 18.) The letter states that RMA "as acting agent for Ameritech, has accepted $61.90 as payment in full on the above referenced account." The account number listed is 312-929-7329-3168. Below that number is RMA account number 424406. (*See* Compl. Ex. D; Ans. ¶ 18.) Mr. Morris alleges that despite this letter, the debt continued to be reported by RMA to the credit reporting agencies as unpaid. (Compl. ¶ 19.)

3

Count I alleges that by reporting the same debt to credit bureaus under two or more account numbers, RMA engaged in deceptive debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, e(2), e(5), e(8), and e(10); engaged in unfair debt collection practices in violation of § 1692f; and engaged in harassing and abusive debt collection practices in violation of § 1692d. Count II alleges that by reporting the same debt to credit bureaus under two or more account numbers, RMA violated the Illinois Collection Agency Act, 225 ILCS 425/9(a).

## STANDARDS

"The Federal Rules of Civil Procedure ("the Rules") provide the federal district courts with 'broad discretion' to determine whether certification of a class-action lawsuit is appropriate." *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). Under the Rules, a determination of class certification requires a two-step analysis. First, the named plaintiff must demonstrate that his action satisfies the four threshold requirements of Rule 23(a):

> (1) numerosity (the class must be so large 'that joinder of all members is impracticable'); (2) commonality (there must exist 'questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (the representative must be able to 'fairly and adequately protect the interests of the class').

*Id.* at 594; Fed. R. Civ. P. 23(a). Additionally, the action must "qualify under one of the three subsections of Rule 23(b)." *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). In this case, plaintiff seeks certification under subsections 23(b)(3). Rule 23(b)(3) provides that an action may be maintained as a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual

4

members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." When evaluating a motion for class certification, the court accepts as true the allegations made in support of certification, and does not examine the merits of the case. *Hardin*, 814 F. Supp. at 706 (citing, *inter alia*, *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974)). The party seeking class certification bears the burden of showing that the requirements for class certification have been met. *Id.* (citing, *inter alia*, *Gen. Tel. Co. of Southwest* v. *Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). Failure to establish any one of the requirements precludes class certification. *Retired Chicago Police Ass'n* v. *City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

## DISCUSSION

Plaintiff asks this court to certify a class of "all individuals whose credit bureau files(s) contained duplicative reports of the same debt, placed thereon by RMA, at any time during the year (Count I) or five years (Count II) preceding the filing of this action [on November 30, 2000]." Defendant opposes the motion on two grounds. First, defendant requests that the court deny certification as premature because it has not been given an adequate opportunity to investigate whether a plaintiff class is appropriate. Defendant argues that without discovery it cannot make an informed decision whether to support or oppose certification. Second, defendant argues that the motion should be denied because plaintiff has not sufficiently established the prerequisites for class certification.

The court is required to determine whether a class action is to be maintained "[a]s soon as

practicable after the commencement of an action brought as a class action[.]" Fed. R. Civ. P. 23(c)(1). However, "the 'practicable' time for determining the maintainability of a class action varies from case to case," *Talley v. Leo J. Shapiro & Assocs., Inc.*, 713 F. Supp. 254, 257 (N.D. Ill. 1989), and the timing of the court's determination may be affected by the factual circumstances of the particular case. 7B Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE 2D § 1785 (West 1986). Moreover, any order granting certification "may be conditional, and may be altered or amended before the decision on the merits." Fed. R. Civ. P. 23(c)(1). Although the court does not disagree with defendant that it is often necessary to permit some discovery before certification in order to adequately determine whether class certification should be granted, *see Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981) ("some degree of discovery may be appropriate in certain cases to aid making the necessary class determinations"), the court concludes that in the instant case, the facts set forth in the complaint and answer are sufficiently detailed that court may make the determination of class certification at this time. *See Gen. Tel. Co. of Southwest*, 457 U.S. at 160 ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ."). Moreover, this is not a case in which defendant had no opportunity to respond or object to the class action complaint or motion. *Compare In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (granting petition for mandamus relief where trial court had entered order for class certification in products liability action where one of the defendants had been added to the case only three days after it was served and had no opportunity, *inter alia*, to respond to the complaint, submit a

brief or seek a hearing on the class action issues). Also, none of the cases cited by defendant involved certification in FDCPA cases, and, the court is not persuaded that (nor has defendant explained how) the concerns warranting pre-certification discovery in the products liability and discrimination cases cited by defendant are present in the instant FDCPA case.[2]

Next, defendant argues that the motion should be denied because it does not sufficiently establish the prerequisites for class certification. The court concludes that plaintiff has sufficiently established the prerequisites for class certification.

A. The Requirements of Rule 23(a)

1. Numerosity – Rule 23(a)(1)

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Keele*, 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(1). In order to establish numerosity, plaintiff need not allege the exact number of members of the proposed

---

[2]*Compare Am. Med. Sys., Inc.*, 75 F.3d at 1086 (noting "national trend to deny class certification in drug or medical product liability/personal injury cases" and that "strict adherence to Rule 23 in products liability cases involving drug or medical products which require FDA approval is *especially* important" since the prerequisites of commonality and typicality are normally difficult to satisfy); *Eggleston*, 657 F.2d at 895 (although "suits alleging racial or ethnic discrimination are often by their very nature class suits," some discovery may be necessary in such cases to "ensure that the party who brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination"); *Meyers v. Bd. of Educ. of the San Juan Sch. Dist.*, 905 F. Supp. 1544, 1578 (D. Utah 1995) (denying motion for class certification as premature where further discovery and factual development could narrow the issues and affect the definition of the putative classes in race discrimination suit for failure to provide educational services to Native Americans); *Hodgin v. Jefferson*, 447 F. Supp. 804, 810 (D. Md. 1978) (denying defendant's motion to dismiss class aspects of civil rights action based on claim of sex discrimination or to strike class action allegation reasoning its determination would be made after discovery on difficult questions as to whether plaintiff could meet numerosity and adequacy of representation elements).

class. *Johnson v. Rohr-Ville Motors, Inc.*, 189 F.R.D. 363, 368 (N.D. Ill. 1999). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Id.* (citing *Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)). The court is entitled to make "common-sense assumptions that support a finding of numerosity." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill.1996); *see also Keele v. Wexler*, 1996 WL 124452, *3 (N.D. Ill. Mar. 19, 1996), *aff'd*, 149 F.3d 589 (7th Cir.1998). Although Mr. Morris does not specify an exact number of class members, he alleges that more than 50 other individuals also have had duplicative reports of the same debt made by RMA to credit bureaus. He argues that the court may infer that the numerosity requirement is met from (1) the size of defendant and (2) defendant's statement that the duplicate reporting was caused by a computer. Specifically, Mr. Morris alleges that defendant is a large debt collection agency and defendant has admitted that it regularly reports alleged debts to credit reporting agencies including the three credit reporting agencies, Equifax, Experian and Trans Union. Defendant has admitted that the reporting of plaintiff's debt under two account numbers was due to defendant's "computer system conversion." From these facts, the court concludes, as a matter of common sense, that the double-reporting of alleged debts likely occurred on more than just plaintiff's account and on a sufficient number of accounts to make joinder of all such persons impracticable. The court notes that this information is particularly within the defendant's control. Yet, when plaintiff alleged in his complaint that there were "more than 50 other individuals also have had duplicative reports of the same debt" (Compl. ¶ 20), defendant stated in its answer that "RMA lacks knowledge or information sufficient to form a belief as to whether it

reported a single debt owed by other individuals to its customers under two different account numbers, and therefore denies the allegation in this paragraph." (Ans. ¶ 20.) Plaintiff also states that he will obtain the exact number of class members through discovery. *Compare Peters v. AT&T*, 179 F.R.D. 564, 566-67 (N.D. Ill. 1998) (numerosity requirement met in FDCPA case based on inference from form letter issued by collection agency and because AT&T for whom debts were collected was a large long distance telephone carrier and noting plaintiff had propounded discovery to determine exact number) *with Trull v. Plaza Assocs.*, 1998 WL 578173, \*\*3-4 (N.D. Ill. Sept. 3, 1998) (numerosity requirement not met in FDCPA case merely on allegation of use of form letter, distinguishing *Peters* on the basis that there plaintiff had propounded discovery to determine exact number but in the instant case plaintiff had "not indicated that she ha[d] taken any discovery in this case or otherwise made any efforts to determine if other class members exist").

Defendant responds that such an inference would result in a finding of numerosity in almost all cases where defendant is a large corporate entity since most if not all large companies use computers to communicate to other companies. Defendant's argument misses the point. While a numerosity inference may not be warranted in every case where defendant is a large corporation that uses computers, taken in a context, such as here, where a plaintiff alleges violations of the FDCPA for double-reporting debts to credit agencies, and the double-reporting is alleged to be *the result of* a computer conversion, the fact that defendant is a large corporation and the double-reporting was allegedly computer-generated warrants an inference of numerosity.

2. <u>Commonality – Rule 23(a)(2)</u>

To meet the commonality requirement, "there must exist 'questions of law or fact common to the class.'" *Keele*, 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(2); *see also Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D. Ill. 1998) (noting that if at least one question of law or fact is common to the class, then commonality is satisfied). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele*, 149 F.3d at 594 (quotation omitted). A common nucleus of operative fact exists where "defendants have engaged in standardized conduct towards members of the proposed class." *Id.* "[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Plaintiff asserts that he common questions of fact and law are (1) whether defendant's reporting the same debt to credit bureaus under two or more account numbers violates one or more sections of the FDCPA as (a) a deceptive debt collection practice in violation of 15 U.S.C. §§ 1692e, e(2), e(5), 3(8), and e(10), (b) an unfair debt collection practice in violation of 15 U.S.C. § 1692f, or (c) a harassing and abusive debt collection practice in violation of 15 U.S.C. §1692d; and (2) whether such conduct violates the ICAA, 225 ILCS 425/9(a). Plaintiff also asserts that there are common questions of fact and of law as to whether defendant's written communication dated May 15, 2000, Ex. A, violates 15 U.S.C. § 1692g. The court concludes that there is a common question of fact in defendant's reporting the same debt to credit bureaus under two or more account numbers, and there are common questions of law as to whether such

10

conduct violates the FDCPA, 15 U.S.C. §1692d;[3] §§1692e, e(2), e(5), 3(8), e(10);[4] § 1692f[5] and the ICAA, 225 ILCS 425/9(a).[6] However, the court concludes that plaintiff has failed to establish that there is a common question of fact or law concerning whether the May 15, 2000 letter sent to plaintiff violates the FDCPA, 15 U.S.C. § 1692g.[7] Plaintiff has not alleged a violation of

---

[3]"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

[4]"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) The false representation of – (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

[5]"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

[6]Section 9(a) prohibits violations of the FDCPA and prohibits "(13) Disclosing or threatening to disclose information adversely affecting a debtor's reputation for creditworthiness with knowledge the information is false. . . . (18) Disclosing or threatening to disclose information concerning the existence of a debt which the debt collector knows to be reasonably disputed by the debtor without disclosing the fact that the debtor disputes the debt. . . . (20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . . (26) Misrepresenting the amount of the claim or debt alleged to be owed. . . . (31) Engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public."

[7]Section 1692g provides that a debt collector has an obligation to send the consumer a written notice of the amount of the debt, the name of the creditor and a statement that the debt is assumed valid unless the consumer disputes its validity within 30 days of receipt of the notice. It also provides that if the consumer gives written notice to the debt collector within the 30 days that the consumer disputes the debt, the debt collector is required to cease collection of the debt until it obtains verification of the debt. *See* 15 U.S.C. § 1692g(a)-(b).

11

§ 1692g in his complaint and although he makes an allegation as to commonality of a violation of § 1692g in the motion for class certification, he has not argued that the class includes individuals who received the same or similar letter. *Compare Shea* v. *Codilis*, 2000 U.S. Dist. LEXIS, *3 (N.D. Ill. Mar. 27, 2000) (granting motion for certification for alleged violation of 1692g from use of form letter where "each proposed class member received the same form letter from Defendants, and the predominant question . . . is whether the language of the form letter violates 15 U.S.C. § 1692g"). Thus, at this time, the court finds commonality only with respect to the questions of fact and law concerning whether defendant's reporting the same debt to credit bureaus under two or more account numbers violates the FDCPA, 15 U.S.C. §1692d; §§1692e, e(2), e(5), 3(8), e(10); § 1692f and the ICAA, 225 ILCS 425/9(a).

Defendant objects to commonality arguing that plaintiff's questions, if accepted as true, raise factual questions that may bear on the definition of the plaintiff class as well as the appropriateness of such a class: (1) if RMA did "double report," did RMA communicate that supposed error to the credit reporting agencies? (2) If so, what did the agencies do, and what effect does the agencies' response to RMA's communication have on the court's determination of who belongs in the class? The court does not believe, however, that such questions destroy the commonality of whether double-reporting violates the above stated provisions. Immaterial factual differences among the class members' claims "will not defeat a class action." *Scholes*, 143 F.R.D. at 185. As to defendant's concern that other questions may arise during discovery, the court, again, is aware that class certification may be revisited at a later date, if needed.

12

3.  Typicality – Rule 23(a)(3)

Defendant does not contest this requirement. To meet the typicality requirement, the named plaintiff's claims or defenses must be "typical . . . of the class." *Keele*, 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(3). The typicality requirement, although closely related to the commonality question, focuses on the class representative. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.*; *De La Fuente v. Stoekly-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar*, 167 F.R.D. at 57. Because plaintiff's and the class members' claims arise out of the same allegedly unlawful conduct – reporting the same debt to credit bureaus under two or more account numbers – and both plaintiff and the class members claims involve whether such conduct violates the FDCPA and ICAA, plaintiff has satisfied the typicality requirement.

4. Adequacy of Representation – Rule 23(a)(4)

To meet the adequacy of representation requirement, "the representative must be able to 'fairly and adequately protect the interests of the class.'" *Keele*, 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(4). Under Rule 23(a)(4), the adequacy of representation determination "is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (quotation omitted). Plaintiff asserts that he has retained experienced counsel, Edelman, Combs & Latturner, a law firm that has represented consumers in class action litigation

13

including a number of cases under the FDCPA. The fact that attorneys have been found adequate in other cases is "is persuasive evidence that they will be adequate again." *Gomez v. Illinois State Bd. of Ed.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987). Defendant does not contest the adequacy of plaintiff's counsel.

As to the second factor, the class representative must not have "antagonistic or conflicting claims" with the members of the purported class. *Gammon v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995) (citing *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)). Plaintiff is qualified to represent the class "only if his 'interest in proving his claim[s] will lead him to prove the claims of the remainder of his class.'" *Haraco, Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 121 F.R.D. 664, 670 (N.D. Ill. 1988) (quotation omitted). Plaintiff asserts that he understands his obligations as class representative and that because of the identity of claims between the plaintiff and the class members, there is no potential for conflicting interests or antagonism between the interests of the named plaintiff and those of the class. Defendant responds that plaintiff's deposition has yet to be taken and the record is comprised only of plaintiff's self-serving allegations. The court concludes that plaintiff's interest in proving his claims regarding whether duplicative reporting violates the FDCPA and ICAA sections denominated above (see commonality requirement), will adequately motivate him to prove these same claims with respect to the remainder of the class.

### B. Requirements of Rule 23(b)

Plaintiff seeks certification under 23(b)(3). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over

14

any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Defendant does not contend that this action may not be brought pursuant to Rule 23(b)(3). The court has already found with respect to commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3) that questions common to plaintiff's proposed class exist. The court also concludes that these questions predominate over individual concerns, which plaintiff suggests consist only of the identification of the affected consumers – a matter capable of ministerial determination from defendant's files. Furthermore, the court finds that the class action method is superior to other methods for resolving this controversy. In the instant case, persons from whom defendant is attempting to collect allegedly delinquent debts are unlikely to be able to pay to retain counsel to protect their rights on an individual basis, thereby making the class action superior to individual actions. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974) ("the improbability that large numbers of class members would possess the initiative to litigate individually" favors the superiority of class actions over individual suits); *Shea*, 2000 U.S. Dist. LEXIS, at *2 ("Because small claims are at stake, it is improbable that many class members would initiate litigation individually" or "may not be aware of the violation of their rights"). Moreover, the FDCPA specifically permits class actions, *see* 15 U.S.C. § 1692k, and a class action is well-suited to the FDCPA context. *Crawford v. Equifax Payment Servs., Inc.* 201 F.3d 877, 880 (7th Cir. 2000) (noting in FDCPA case that "[b]ecause these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed").

15

## CONCLUSION

Because plaintiff has satisfied the necessary elements of Rule 23(a) and Rule 23(b)(3), the court GRANTS his motion for class certification [#4] as follows: The court defines the class as "all individuals whose credit bureau files(s) contained duplicative reports of the same debt, placed thereon by RMA, at any time during the year (Count I) or five years (Count II) preceding the filing of this action [on November 30, 2000]." However, because plaintiff has failed to establish that there is a common question of fact or law concerning whether the May 15, 2000 letter (Ex. A) sent to plaintiff violates the FDCPA, 15 U.S.C. § 1692g (a violation which is not alleged in the complaint), the court denies without prejudice certification of a class of recipients of such a letter.

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 13, 2001

16